CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 23 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

KELVIN CANADA,
    Plaintiff,

v.                                         Civil Action No. 7:06cv00190

TRACY RAY, et al.,
    Defendants.                 By: Hon. Michael F. Urbanski
                                               United States Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Kelvin Canada, a Virginia inmate proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Canada alleges that while incarcerated at Red Onion State Prison ("ROSP"), defendants violated his constitutional rights and rights afforded under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").[1] This matter is now before the court on defendants' motion for summary judgment. Upon review of the record, the undersigned finds that the majority of Canada's claims were not properly exhausted before Canada filed this action, and that the defendants are entitled to judgment as a matter of law as to the remaining claims. Accordingly, the court recommends that defendants' motion for summary judgment be granted and that Canada's complaint be dismissed.

I.

Canada alleges that since his incarceration at ROSP he has been served food items which Muslims are forbidden to ingest. Although Canada receives the Common Fare Diet, he claims

---

[1] Although Canada's original complaint did not include a RULIPA claim, Canada later amended his complaint to bring a claim under this statute.

that he has been served cottage cheese, grits, farina, white bread, and cabbage, all of which allegedly contain pork products and, therefore, violate his religious tenets.

Additionally, Canada claims that on six occasions he was served spoiled fruit or vegetables which, if ingested, could make him ill. However, he concedes that on at least two of those instances, when he complained to correctional officers, his fruit and/or vegetable servings were replaced with non-spoiled products. Further, he does not allege that he has actually become ill or suffered any other harm due to the spoiled fruits and vegetables.

Canada also complains that he cannot satisfy his religious needs because institutional officials refuse to allow him to participate in group "Jumu'ah" services, he is no longer allowed to have a walkman, and ROSP does not "show Islamic videos" or conduct any other "Islamic service." Further, he alleges he has been denied access to the institutional law library; on two occasions his mail was improperly returned to the sender; he has been denied "black history materials;" and he continues to be unfairly housed in segregation.

Canada avers that all of the claims raised in the instant action are properly exhausted, yet he has provided no evidence to support this assertion. Canada concedes that his grievances related to the denial of adequate religious services, religious programming, and/or adequate means to practice his religion and the denial of "black history materials" were not fully exhausted until sometime after May 1, 2006. Canada has provided no evidence demonstrating exhaustion of his claim that he was served food products which did not meet his religious requirements.

2

## II.

In support of their motion for summary judgment, defendants have attached and incorporate from their earlier response to Canada's motion for preliminary injunctive relief, information pertaining to Canada's grievance, medical, and disciplinary infraction history since his incarceration at ROSP. Additionally, defendants submitted affidavits from multiple prison employees explaining and refuting Canada's claims related to the institutional religious programs and services offered, meals served at ROSP, and the institutional mail and grievance policy.

Defendants contend that Canada failed to properly exhaust his claims of inadequacies in institutional religious programs and/or available religious services, the prohibition of "black history materials," and the serving of food substances which fail to conform to his religious beliefs and, accordingly, assert those claims must be dismissed pursuant to 42 U.S.C. § 1997e(a). In support of this argument, defendants submitted the affidavit of Fonnie Taylor, the Grievance Coordinator at ROSP. Taylor states that ROSP has in place an Inmate Grievance Procedure that prisoners can utilize to resolve complaints, appeal administrative decisions, and challenge institutional procedures and rules. Taylor avers that Canada has not pursued any of the above mentioned claims through all available levels of administrative review.

Further, Taylor states that though Canada filed more than forty grievances between January, 2004 and May, 2006, he only pursued three of those grievances through all available administrative levels. Those grievances concern the spoiled fruit and/or vegetables, access to the law library, and his incoming mail claims. With regard to those claims, defendants assert that Canada has failed to present a claim on which relief can be granted.

3

V. Phipps, a Registered Nurse and the Head Nurse at ROSP, avers in her affidavit that Canada's medical record reveals that he has not complained of illness or weight loss attributable to spoiled food. Further, his medical record establishes that since filing the instant action he gained ten pounds.

Tracy Ray, the Warden at ROSP, avers in his affidavit that on December 15, 2005, Canada submitted a request for 326 pages of legal materials from the institutional law library. Those materials were delivered to Canada on December 19, 2005, but Canada failed to return them. As a result, Canada's subsequent request for legal materials on March 9, 2006 was denied. Canada's law library privileges were fully restored on June 30, 2006, and he has since received all requested materials.

Ray's affidavit also addresses Canada's claims that his mail was improperly returned to sender. He avers that on April 10, 2006 and May 10, 2006, Canada's sister mailed him drawings of "Black Panthers" authored by another ROSP inmate. Those drawings were returned to her with an explanation that the drawings were deemed a security threat and violated Division Operating Procedure 851 ("DOP 851"). DOP 851 prohibits inmates from receiving correspondence from another inmate which was not previously approved by the warden and/or mail which is determined to represent a direct threat to life or property, evinces a criminal act, and/or contains sexually explicit material.

### III.

Upon motion for summary judgment, the court must view the facts and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. v. Commc'ns Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985), overruled on other grounds by 490

4

U.S. 228 (1989). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477, 477-78 U.S. 242 (1986).

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on mere allegations or denials of the adverse party's pleadings. Instead, the adverse party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for trial. Fed. R. Civ. P. 56(e). If the adverse party fails to show a genuine issue of material fact, summary judgment, if appropriate, may be entered against the adverse party.

### A.  Unexhausted Claims

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust all available administrative remedies before bringing a claim under § 1983 or RLUIPA. 42 U.S.C. § 1997e(a) (2000), Woodford v. Ngo, 126 S.Ct. 2378, 2382 (2006)(stating that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory"); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005). Furthermore, prisoners must not just initiate timely grievances, but must also make a timely appeal of any denial of relief through all levels of available administrative review. Woodford, 126 S.Ct. at 2387 (holding that the PLRA requires "proper exhaustion" of institutional administrative remedies before filing any federal suit challenging prison conditions); Porter v. Nussle, 534 U.S. 516, 532 (2002)(stating that the PLRA applies to "all

5

inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"); Booth v. Churner, 532 U.S. 731, 739 (2001)(finding that PLRA requires administrative exhaustion prior to the filing of a federal civil rights suit even if the form of relief the inmate seeks is not available through exhaustion of administrative remedies).

Canada alleges that all of his claims are exhausted. However, he concedes that his claims related to the denial of adequate religious services, religious programming, and/or adequate means to practice his religion and the denial of "black history materials" were not exhausted until sometime after May 1, 2006. As Canada filed his complaint on or about March 8, 2006, it is clear that these claims were not properly exhausted before Canada filed this action and, therefore, must be dismissed. Porter, 534 U.S. at 524 (stating that exhaustion is a prerequisite to filing suit); see also Dixon v. Page, 291 F.3d 485 (7th Cir. 2002)(citing Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999))(finding that by the plain language of the statute, exhaustion of administrative remedies is a precondition to the filing of a prisoner's civil rights action).

Canada also alleges that his claim that the defendants continue to serve him food substances which Muslim inmates, like himself, are prohibited from eating are exhausted. Although defendants bear the initial burden of proving failure to exhaust, once a threshold showing is made, the plaintiff must come forward with something more than merely a conclusory allegation of exhaustion. See Ross, 759 F.2d at 365. Canada has not produced any evidence refuting Taylor's affidavit that he failed to pursue this claim through all levels of administrative review. The only exhausted grievances related to food issues allege merely that

6

Canada was served rotten fruit and/or vegetables on six occasions. Those grievances do not mention that he has been served cottage cheese, grits, farina, white bread, cabbage, or any other food substance which if consumed would violate his religious beliefs. Accordingly, the court finds that Canada has failed to exhaust this claim, and it too must be dismissed. See McGee v. Fed. Bureau of Prisons, et al., 118 Fed. Appx. 471, 476 (10th Cir. 2004)(holding that to have properly exhausted a claim an inmate must have filed grievances with sufficient detail to alert prison officials of the possible constitutional claims which are now alleged as a basis for relief).

The undersigned finds that Canada failed to satisfy the requirements of 42 U.S.C. § 1997e(a) as to his claims of inadequacies in the institutional religious programs and/or available religious services, the prohibition of "black history materials," and the serving of food substances which fail to conform to his religious beliefs and, therefore, recommends that these claims be dismissed.

### B. Rotten Fruit and Vegetables

Canada complains that on six occasions he was served rotten fruits and vegetables in violation of the Eighth Amendment. Although the Eighth Amendment protects prisoners from cruel and unusual living conditions, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). As a result, in order to state a claim of constitutional significance regarding prison conditions, a plaintiff must demonstrate that the living conditions violated contemporary standards of decency and that prison officials were deliberately indifferent to those conditions. Wilson v. Seiter, 501

7

U.S. 294 (1991). Additionally, the plaintiff must allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25 (1993). Mere allegations of insufficient or unpalatable food, absent any suggestion of deleterious effects, fail to state a claim under the Eighth Amendment See White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993).

Canada has not presented any evidence which suggests he suffered any injury as a result of the allegedly spoiled fruit and/or vegetables he was served. Canada concedes that of the six instances he claims he was served spoiled food, twice his food was replaced. Absent any proof of injury, being served spoiled fruit or vegetables on four occasions is not so extreme or inhumane as to justify relief. Therefore, the undersigned finds that the defendants are entitled to judgment as a matter of law on this claim and recommends that Canada's claims related to the incidents of spoiled fruit and vegetables be dismissed.

### C. Law Library Materials

Canada has failed to allege any facts which suggest that the defendants' failure to provide him with access to law library materials violated the First Amendment. Reasonable access by prisoners to both state and federal courts is a guaranteed right. Ex parte Hull, 312 U.S. 456 (1941); see Procunier v. Martinez, 416 U.S. 396 (1974). However, in addition to showing some interference with this right or some deficiency in the legal resources available to him, an inmate claiming officials have denied him access to the courts must produce evidence of actual injury or specific harm related to litigation involving a challenge to the conditions of his confinement or

8

the fact of his confinement. Lewis v. Casey, 518 U.S. 343 (1996); Strickler v. Waters, 989 F.2d 1375 (4th Cir. 1993).

Canada alleges that from December 17, 2005 forward, he was denied all requested law library materials. However, Canada does not refute defendants' affidavits establishing that on December 19, 2005 he was provided with more than 300 pages of materials he requested from the law library and that he did not make any subsequent requests for materials until March 9, 2006. Further, he admits that his privileges were temporarily suspended because he did not properly return the materials loaned in December, 2005, but that by July 5, 2006 his privileges were fully restored. Canada has failed to allege any facts which suggest that the lack of legal materials caused him any actual injury. Furthermore, Canada's filing of the current suit, an amendment to his complaint, various motions, and responses to the defendants' pleadings which cite numerous legal authorities and bases for relief confirm that prison officials have not hindered his ability to correspond with the courts nor to prosecute this action. Thus, the undersigned finds plaintiff's allegations of denied access insufficient to constitute a First Amendment violation and recommends dismissal of this claim.

### D. Mail

Similarly, Canada's allegations that defendants improperly returned to sender his incoming mail fail to state an actionable First Amendment claim. "[I]mprisonment carries with it the circumscription or loss of many rights . . . [and] these constraints [are] necessary . . . to accommodate a myriad of 'institutional needs and objectives' . . . chief among which is internal security." Hudson v. Palmer, 468 U.S. 517, 524 (1984)(citing Wolff v. McDonnell, 418 U.S. 539, 555 (1974)). Accordingly, prison policies may necessarily infringe on constitutional rights

9

to maintain security. See Turner v. Safley, 482 U.S. 78, 89 (1987). In such instances, the court will examine that regulation and find it valid only if it is reasonably related to a legitimate penological interest. Id. However, the court must give prison officials considerable deference in determining what regulations are reasonably necessary to maintain order and safety within the institution. See Thornburgh v. Abbott, 490 U.S. 401, 404-07 (1989).

Canada alleges that DOP 851 is impermissibly ambiguous such that two pieces of mail addressed to him were returned to sender. Defendants aver that correctional employees determined that the correspondence at issue, which consisted solely of drawings of "Black Panthers" authored by another ROSP inmate, posed a security threat and violated DOP 851 and, therefore, were returned. The court finds that DOP 851 is reasonably related to ensuring that both incoming and outgoing mail from any Department of Corrections facility does not violate any federal or state laws and does not threaten the safety and/or security of the institution, staff, inmates, and/or the general public, which are valid penological interests. As determining what constitutes a threat to institutional safety is clearly within the purview of prison administrators, the undersigned believes that prison officials acted within the ambit of their authority in refusing to forward these "letters" to Canada. See Pell v. Procunier, 417 U.S. 817, 827 (1974)(stating that judgments regarding prison security are particularly within the province and professional expertise of correctional officials and, therefore, the court will usually defer to their judgment in such matters). Moreover, as Canada does not dispute that DOP 851 prohibits correspondence between inmates, and as the correspondence at issue was authored by another inmate and was merely forwarded to Canada by way of a third party, the correspondence obviously violated institutional policy. As such, the undersigned recommends that this claim also be dismissed.

### E. Segregation

Finally, to the extent Canada alleges that his current incarceration at ROSP violates his due process rights or amounts to cruel and unusual punishment, it fails.[2] "In order to prevail on . . . a procedural . . . due process claim, [an inmate] must first demonstrate that [he was] deprived of 'life, liberty, or property' by governmental action." Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). An inmate has no constitutional right to be housed in any particular prison, and prison officials have broad discretion to determine the facility at which an inmate is housed. Sandin v. Conner, 515 U.S. 472, 484 (1995)(holding that protected liberty interests are generally limited to freedom from restraint which impose atypical and significant hardship on an inmate in relation to ordinary incidents of prison life); Meachum v. Fano, 427 U.S. 215, 224 (1976) (holding that a valid conviction "empower[s] the State to confine [an inmate] in any of its prisons"); Montayne v. Haymes, 427 U.S. 236, 242 (1976)(holding that a mere transfer from one facility to another does not implicate the Due Process Clause, regardless of whether the transfer is the result of the inmate's misbehavior or is punitive in nature); but see, Wilkinson v. Austin, 545 U.S. 209 (2005)(holding that, despite general rule that an interprison transfer does not implicate the Due Process Clause, a transfer to a so-called "Supermax" facility at which prisoner would experience exceptionally more onerous conditions did implicate the Due Process Clause). As Canada does not have a general liberty interest in being incarcerated in any particular facility, the court finds that he has not stated a due process claim.[3]

---

[2] Although Canada alleges he has exhausted this claim and defendants assert that he has not, the court finds that this claim lacks merit and, therefore, need not address the exhaustion issue.

[3] Additionally, the court notes that although Canada deems his continued placement at ROSP unjustified, his disciplinary records reveal that throughout his incarceration he has engaged in

11

Likewise, Canada's placement at ROSP does not violate the Eighth Amendment. Canada has not alleged he has suffered any significant injury or is at risk of future injury due his current place of incarceration and/or placement in segregation, therefore, he fails to state a cognizable Eighth Amendment claim. See Strickler, 989 F.2d at 1380-1381; see also Helling, 509 U.S. at 25.

## IV.

For the reason stated above, the court finds that Canada failed to satisfy the requirements of 42 U.S.C. § 1997e(a) as to his claims of inadequacies in the institutional religious programs and/or available religious services, the prohibition of "black history materials," and the serving of food substances which fail to conform to his religious beliefs. Further, the court finds that the defendants are entitled to judgment as a matter as to all remaining claims. Accordingly, it is **RECOMMENDED** that the defendants' motion for summary judgment be granted and that Canada's complaint be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The clerk is directed to immediately transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if they have any, to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusions of law rendered herein by the undesigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C § 636(b)(1)

---

multiple physical and verbal altercations with staff and other inmates, frequently has refused to obey direct orders, and that such assaultive and disruptive behavior has continued despite his incarceration at ROSP. As such, the court finds there is a reasonable basis for his continued incarceration at a higher security institution and/or in segregation.

12

as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by the reviewing court as a waiver of such objection.

Further, the Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

Entered this 23rd day of August, 2006.

*/s/ Michael F. Urbanski*
Michael F. Urbanski
United States Magistrate Judge